**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| ELECTRONIC FRONTIER FOUNDATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:09-cv-01151 (EGS) |
| v. | ) | |
| | ) | |
| | ) | |
| DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |

_____)

**STATEMENT OF MATERIAL FACTS**

Pursuant to Local Rule LCvR 7(h), Defendant Department of Justice submits the

following statement of material facts as to which there is no genuine dispute for purposes of its

Motion for Summary Judgment filed on this date.

<u>PLAINTIFF'S FOIA REQUEST</u>

1.      On December 5, 2008 plaintiff sent a Freedom of Information Act ("FOIA")

request by facsimile to FBIHQ seeking "a complete copy of the FBI's Domestic Investigative

Operational Guidelines ("DIOG"), which became effective on December 1, 2008, and which

implement the Attorney General's Guidelines for Domestic FBI Operations."  Declaration of

David M. Hardy ("Hardy Decl.") ¶ 5.

2.      The FBI acknowledged receipt of this request by letter dated December 16, 2008,

and assigned it FOIA Number 1123412.  Hardy Decl. ¶ 6.

3.      On May 29, 2009 the FBI responded to plaintiff's request and stated:

> The document you requested is currently undergoing a review by the
> FBI's Corporate Policy Office to determine which portions of the DIOG
> can be released to the public.  Upon the completion of this review, the FBI
> will make those portions available to the public on the FBI's public
> website.  The information that will be posted on the website would be the

> same information released in response to this request.  Accordingly, the
> FBI is closing your request.  The FBI will notify you when the information
> is available on the FBI's public website.

Hardy Decl. ¶ 7.

4.      On June 24, 2009, plaintiff filed a Complaint in the U.S. District Court for

the District of Columbia, requesting a release of all records responsive to its December 5, 2008

FOIA request.  Hardy Decl. ¶ 8.

5.      In late September 2009, a redacted version of the DIOG was made public on the

FBI's website.  Plaintiff was sent a separately-processed version of the DIOG on October 13,

2009.  In connection with this briefing, the FBI has released a version of the DIOG containing

fewer redactions than the version provided to EFF on October 13.  Hardy Decl. ¶ 9.

6.      Every effort has been made to provide plaintiff with all material in the public

domain and with all reasonably segregable portions of releasable material.  No reasonably

segregable, nonexempt portions were withheld from plaintiff.  Hardy Decl. ¶ 9.

7.      A further description of the information withheld could identify the very material

which the FBI seeks to protect.  Hardy Decl. ¶ 9.

8.      The exemptions asserted by the FBI as grounds for non-disclosure of portions of

documents are FOIA Exemptions 1, 2, 5, 6, 7(A), 7(C) and 7(E), 5 U.S.C. §§ 552 (b)(1), (b)(2),

(b)(5), (b)(6), (b)(7)(A), (b)(7)(C) and (b)(7)(E).  Hardy Decl. ¶ 9.

## JUSTIFICATION FOR WITHHOLDING PURSUANT TO FOIA EXCEPTION 7(E)

9.      The DIOG was compiled for law enforcement purposes.  *See* Hardy Decl. ¶ 29,

Ex. D at DIOG-11.

10.     The DIOG's rules and procedures affect virtually all of the FBI's investigative

activities and techniques.  *See* Pistole Decl. ¶ 10.  The DIOG contains descriptions of

substantially all of the FBI's procedures, techniques and strategies for conducting investigations. *See id.* ¶ 12.  Release of the entire DIOG would allow entities or individuals to assemble a complete picture of the FBI's strategies.  *See id.*

11.     The FBI redacted information from the DIOG concerning 18 categories of information pursuant to FOIA Exemption 7(E).  *See* Pistole Decl. ¶¶ 12-29, 32-49.

Operational Directives

12.     The FBI redacted from the DIOG certain material concerning "Operational Directives," which consist of the policies and procedures, standards, or strategies contained within the DIOG.  Moreover, the fact that the DIOG consolidates diverse sources of information makes its complete revelation even more problematic.  While different entities and individuals may lack the capacity to gather discrete pieces of information to form a picture of the FBI's strategies, the DIOG does that work for them. Consequently, its revelation increases the risk that targets of investigations avoid detection or develop countermeasures to circumvent the ability of the FBI to effectively use these important national security law enforcement techniques.  *See* Pistole Decl. ¶¶ 12, 32.

NSPD-46/HSPD-15 (Presidential Anti-Terrorism Directives)

13.     The FBI redacted from the DIOG two passages concerning two classified Presidential Directives concerning the United States ongoing battle against terrorism (NSPD-46 & HSPD-15).  While the redacted material itself is not classified, it does describe the information and guidance provided to the FBI and other federal entities regarding their roles and responsibilities in the ongoing effort to defeat terrorism.  Release of the redacted information could risk circumvention of the law in two ways.  First, identification of the matters covered by the Annex will provide potential terrorists with information about what activities are governed

by the Annex and, therefore, within the purview of more than one agency.  Second, revealing this

general description of the Annex may entice those interested in conducting espionage against the

United States to seek a copy of the NSPD-46/HSPD-15/Presidential/Anti-Terrorism Directives

and its Annexes.  *See* Pistole Decl. ¶¶ 13, 33.

Unaddressed Work

14.     The FBI redacted four paragraphs from the DIOG concerning "unaddressed

work" that the FBI has not yet completed.  The redacted material concerns the disposition and

use of materials associated with unaddressed work.  This information describes internal FBI

procedures of no interest to the general public.  However, its release could encourage

circumvention of the law to the extent that knowing what information is maintained and how and

where it is maintained may present a target for entities or individuals seeking to engage in

espionage.  Further, revelation of this material may alter a potential lawbreaker's risk-benefit

analysis with respect to engaging in illegal activity, as it covers the allocation of the FBI's

investigative resources and limitations on FBI activities when the FBI lacks investigatory

resources.  *See* Pistole Decl. ¶¶ 14, 34.

Collection and/or Analysis of Information

15.     The DIOG describes numerous methods that the FBI uses to collect and analyze

the information that it obtains for investigative purposes.  The release of this information would

disclose the identity of methods used in the collection and analysis of information.  Such

disclosures would enable subjects of FBI investigations to circumvent similar currently used

techniques.  The relative utility of these techniques could be diminished if the actual techniques

were released in this matter.  This in turn would facilitate the accumulation of information by

investigative subjects regarding the circumstances under which the specific techniques were used

or requested and the usefulness of the information obtained.  Release of this type of information

would enable criminals to educate themselves about the techniques employed for the collection

and analysis of information and therefore allow these individuals to take countermeasures to

circumvent the effectiveness of these techniques and to continue to violate the law and engage in

intelligence, terrorist, and criminal activities.  *See* Pistole Decl. ¶¶ 15, 35.

Identification and Contents of File Numbers, Forms and Databases.

16.     Throughout the DIOG, there are references to specific filing numbers and

procedures and the information recorded on specific forms and maintained in specific non-public

databases.  This information identifies where within the FBI particular sorts of information are

recorded, including identification of information contained within specific proprietary FBI

databases.  While this information relates to internal FBI procedures and is of no interest to the

general public, it could be of great interest to entities seeking to engage in espionage against the

United States by obtaining secret information about national security and terrorism

investigations.  In addition, by identifying what types of information are needed to authorize

particular investigative techniques, release of this information could assist a potential criminal by

identifying information to obscure or hide in order to "cover one's tracks."  *See* Pistole Decl. ¶¶

16, 36.

Identification of Specific Individuals or Committees to Whom Information Must be Reported.

17.     The DIOG specifically identifies individual offices or officers to whom

information must be reported.  As with identifying forms and databases that contain information,

providing information about who, specifically, learns about investigatory information presents an

opportunity for counterintelligence exploitation, but is otherwise a matter of internal procedure

in which there is no interest to the general public.  *See* Pistole Decl. ¶¶ 17, 37.

<u>Specific Scenarios in Which Particular Activities or Techniques are Authorized</u>.

18.     The DIOG contains a number of concrete hypothetical examples that describe when particular activities (such as an assessment) or particular investigative techniques may be used.  This information is in the nature of internal procedural information.  Release of such information presents an increased risk of potential circumvention.  If an individual considering engaging in illegal activity were aware of specific activities that would or would not trigger authority for particular investigative activities or techniques, he or she could alter his or her behavior to avoid detection.  In addition, knowing that particular activity would not trigger authority for a particular investigative activity or technique may embolden a potential lawbreaker to proceed with his or her plans.  *See* Pistole Decl. ¶¶ 18, 38.

<u>Scope of Sensitive Investigative Matters</u>.

19.     The DIOG identifies certain sensitive investigative matters for which additional notifications and authorizations are required.  *See, e.g,* DIOG-68.  Which procedures are subject to such heightened authorization requirements is a matter of internal FBI rules and procedures.  While the FBI has attempted to disclose as much information as possible about what it considers to be sensitive investigative matters, it has determined that the release of more would risk circumvention of law or the FBI's enforcement efforts.  In assessing whether or not to engage in criminal activity, some criminals may weigh the risk of detection against the rewards for engaging in the behavior.  Knowing that some matters are considered sensitive by the FBI may lead an individual to conclude that because the investigative technique or activity  necessary to detect the activity is administratively more burdensome for the FBI to conduct, the FBI is less likely to actually conduct the investigation.  A person reaching this conclusion may be more likely to engage in the prohibited activity.  *See* Pistole Decl. ¶¶ 19, 39

Terms and Definitions.

20.     Related to the redaction of information concerning the scope of sensitive investigations, the FBI has redacted the definitions of the following types of subjects of sensitive investigations or other investigations that lead to heightened approval standards: "political organization or individual prominent in such organization," "religious organization," "member of the media or news organization," and "academic nexus."  Any investigation of an organization or person falling within these definitions receives heightened scrutiny and special treatment as compared to other non-sensitive investigations or investigations lacking an academic nexus. Therefore, it would be in the best interests of a front organization or an intelligence operative to tailor its/their activities to meet the definitional requirements and thereby possibly evade, elude or circumvent investigation by inviting heightened scrutiny to any such investigation.  By fitting themselves into the definition and calling attention to their status, the organization/operative can wrap themselves in the cloak of activities given preferred status by law and essentially challenge the FBI to investigate knowing that any investigative action would  be subject to internal and external examination. It must be emphasized that unlike the definitions of "domestic public official" and "political candidate," which were released in the public version, these definitions are unique and FBI-specific, not found in a dictionary and not necessarily given a definition that would be intuitively obvious.  *See* Pistole Decl. ¶¶ 20, 40.

Approval Limitations on Techniques or Procedures that May be Used In Certain Types of Investigation

21.     The DIOG collects in one place descriptions of many investigative activities. Whether a particular investigative activity may be undertaken in connection with an assessment, a predicated investigation or so forth is a matter of internal procedures.  Likewise, where

approval is required for a particular investigative technique, the necessary conditions for approval are matters internal to the FBI.  Disclosure of this information, however, could increase the risk of circumvention.  A person either considering committing a crime or attempting to evade detection, knowing that certain investigative activities are or are not prohibited during certain types of investigation, can combine this knowledge with other information to determine whether their activities are likely to be detected.  Similarly, knowledge that a particular activity will not be approved absent certain types of information can be exploited by someone seeking to evade detection.  *See* Pistole Decl. ¶¶ 21, 41.

Technical or Practical Limitations on Particular Investigative Techniques.

22.     The DIOG includes descriptions of dozens of investigative techniques employed by the FBI.  Many of those investigative techniques have practical limitations (for example, those imposed by the limits of cooperation with other entities) or technical limitations (for example, data that can or cannot be retrieved).  These limitations are not generally known but would obviously be of genuine interest to anyone seeking to evade the FBI's efforts to enforce the law.  *See* Pistole Decl. ¶¶ 22, 42.

Policies on Cooperation with State, Local, Tribal and Foreign Law Enforcement Agencies.

23.     The DIOG also provides guidance as how and to what it extent it will work with state, local and tribal agencies in connection with those entities' law enforcement efforts. Information about when and to what extent the FBI will involve itself in state, local and tribal investigations would be useful to an individual or entity attempting to avoid federal scrutiny because of fears that federal scrutiny would prompt more aggressive enforcement efforts. Accordingly, the portions of the DIOG concerning these limitations have been redacted.  *See* Pistole Decl. ¶¶ 23, 43.

Limitations on Certain Domestic Investigative Activities with Foreign Impact.

24.     Portions of the DIOG describe instances in which domestic investigative activities may have an impact in foreign nations despite the activities being initiated domestically. These activities are subject to special restrictions and approvals. At DIOG-238, the FBI has redacted a number of specific investigative activities that fall under this rubric. Information about under what conditions these additional approvals are required could assist a potential criminal in determining that certain activities are unlikely to garner scrutiny because the relative difficultly of gaining approval for the use of particular techniques designed to detect these activities. *See* Pistole Decl. ¶¶ 24, 44.

Undisclosed Participation.

25.     The DIOG contains a collection of procedures governing the FBI's undisclosed participation in the activities of third parties. The effectiveness of these techniques is directly contingent upon the FBI keeping its identity secret. The FBI has redacted provisions in the DIOG which describe what FBI personnel and confidential sources may or may not do while engaged in undisclosed participation. Were an individual or entity engaged in a criminal activity to know this information, it could use it to devise "tests" to detect FBI participation. Not only would this undermine the effectiveness of the technique, but it could also place FBI agents or sources in physical jeopardy. Moreover, providing information about the conditions under which these activities are allowed would allow potential criminals or national security threats to tailor their activities to evade detection. *See* Pistole Decl. ¶¶ 25, 45.

Duration of Particular Techniques.

26.     The DIOG, at various points, describes the time limitations imposed on the use of various investigative techniques. While these internal guidelines are of no interest to the general

public, they are of potential interest to persons seeking to evade detection or prosecution for criminal activity.  A person learning that a particular technique has been applied in an investigation would be able to combine this information with details from the DIOG to ascertain how long to delay engaging in a criminal activity in order to avoid detection.  *See* Pistole Decl. ¶¶ 26, 46.

Surveillance and Monitoring Information.

27.     Exemption (b)(2) has been asserted in conjunction with (b)(7)(E) to withhold information which could reveal the use of various investigative techniques.  The release of this information would disclose the identity and types of devices or methods used in surveillance and monitoring.  Such disclosures would enable subjects of FBI investigations to circumvent similar currently used techniques.  The relative utility of these techniques could be diminished if the actual techniques were released in this matter.  This in turn would facilitate the accumulation of information by investigative subjects regarding the circumstances under which the specific techniques were used or requested and the usefulness of the information obtained.  Release of this type of information would enable criminals to educate themselves about the techniques employed for surveillance and monitoring and therefore allow these individuals to take countermeasures to circumvent the effectiveness of these techniques and to continue to violate the law.  *See* Pistole Decl. ¶¶ 27, 47.

Identification of Obscure Capacities or Investigation Techniques.

28.     The entire DIOG constitutes a set of internal procedures and guidelines for the application of investigative techniques to specific situations.  In the course of describing these guidelines, the DIOG references certain technologies, investigative capacities and techniques that

are not widely known.  Knowledge of the existence of these technologies, capacities or

techniques could aid criminals aiming to avoid detection.  *See* Pistole Decl. ¶¶ 28, 48.

Internal Web and E-mail Addresses and Phone Numbers.

29.    The DIOG contains internal web addresses where particular information

pertaining to the DIOG can be located on the FBI's Intranet (secure) system, as well as internal

e-mail addresses and telephone numbers used for the purposes of investigative matters.  Internal

e-mails and web site addresses clearly relate to the internal practices of the FBI in that they are

utilized by FBI personnel during the performance of their jobs.  Disclosure of this type of contact

information could subject these individuals to harassing e-mails which could disrupt official

business (including by impeding the ability of Special Agents to conduct and conclude law

enforcement investigations in a timely manner).  Routine internal administrative information

such as the addresses referenced above serve no public benefit, and there is no indication that

there is a genuine public interest in the disclosure of these numbers.  *See* Pistole Decl. ¶¶ 29, 49.

JUSTIFICATION FOR WITHHOLDING OF MATERIAL UNDER FOIA EXEMPTION 2

30.    Concurrently with its assertion of FOIA Exemption 7(E), the FBI also invoked

FOIA Exemption (b)(2).  *See* Pistole Decl. ¶ 10.

31.    For the same reasons described in paragraphs 12-29 above, the revelation of the

information redacted pursuant to FOIA Exemption (b)(2) could enable potential targets of

investigations to avoid detection or develop countermeasures to circumvent the ability of the FBI

to enforce the laws.  *See* Pistole Decl. ¶ 10, 12-29.

32.    Internal information concerning such matters as where unaddressed work is kept,

what forms are filled out and file numbers are used internally at the FBI, to whom information is

reported and internal phone numbers is of no general interest to the public.  *See* Pistole Decl. ¶¶ 14, 16, 17, 29.

JUSTIFICATION FOR WITHHOLDING OF MATERIAL UNDER FOIA EXEMPTION (B)(5)

33.     Exemption (b)(5) has been asserted to protect the internal deliberations of the FBI by exempting from release drafts, recommendations, analyses, speculation, and other non-factual information prepared in anticipation of agency decision making.  Release of this type of information would have an inhibitive effect upon the development of policy and administrative direction of an agency because it would chill the full and frank discussion between agency personnel regarding a decision.  If agency personnel knew that their preliminary opinions, evaluations and comments would be released for public consumption, they may be more circumspect in what they put in writing, and thereby impede a candid discussion of the issues surrounding a decision.  In this case, the DIOG contains draft provisions relating to a proposed, but not yet formalized entity called the Special Operations Review Committee ("SORC").  The FBI is still defining the role, responsibilities and composition of the SORC.  If information of this nature were to become routinely public, the FBI would be impeded from having free internal discussions about such arrangements in the future.  *See* Hardy Decl. ¶ 28.

JUSTIFICATION FOR WITHHOLDING INFORMATION UNDER FOIA EXEMPTION
(B)(7)(A)

34.     The FBI has asserted FOIA Exemption (b)(7)(A) in two places to protect the names of the subjects of  pending investigation.  *See* Hardy Decl. ¶ 32, Ex. E .

35.     Any release of information from the responsive portions of the DIOG would be inappropriate due to the harm which could ensue.  Once information is released and is in the public domain, the information concerning the investigation could reach the individuals or

entities who are under investigation.  In this regard, the following potential harms from the

release of this information exist:

> (a) The use of information released to counteract evidence developed by investigators;

> (b) The locations in the United States, as well as foreign countries where the FBI is focusing the investigation and collection of investigative and source material.

*See* Hardy Decl. ¶ 33.

36.     Furthermore, the release of this information to third parties not directly involved

in these matters could allow these third parties to interfere with the pending proceedings by

harassment, intimidations, and creation of false evidence.  Once a release is made to the plaintiff

under the FOIA, the use and dissemination of the same information to third parties is

unrestricted.  *See id.* ¶ 34

## JUSTIFICATION FOR WITHHOLDING INFORMATION UNDER FOIA EXEMPTIONS (B)(6) AND (B)(7)(C)

37.     The FBI has redacted, in one place, the name of an FBI agent.  In making this

redaction, the FBI determined that the individual's privacy interests were not outweighed by any

public interest in disclosure.   Every effort has been made to release all segregable information

contained in these records without invading the privacy interests of this individual.  *See* Hardy

Decl. ¶¶ 38-39.

38.     The SA mentioned did not choose his or her assignment.  Publicity, adverse or

otherwise, regarding any particular investigation conducted by the SA may seriously impair the

SA's effectiveness in conducting future investigations.  This privacy consideration also protects

the SA from unnecessary, unofficial questioning as to the conduct of an investigation, whether or

not he or she is currently employed by the FBI.  *See id.* ¶ 39.

39.     FBI SAs conduct official inquiries into violations of various criminal statutes and national security cases.  They come into contact with all strata of society, conducting searches and making arrests, all of which result in reasonable but nonetheless serious disturbances to individuals and their lives.  It is possible for an individual targeted by such law enforcement actions to carry a grudge which may last for years, and to seek revenge on the agents and other federal employees involved in the investigation.  The publicity associated with the release of the identity of an FBI SA in connection with a particular investigation could trigger hostility towards the SA by the persons being investigated.  The FBI determined that the SA whose name and information appear in these documents maintain a substantial privacy interest in not having his or her identities disclosed.  Thus, disclosure of this information would constitute a clearly unwarranted invasion of personal privacy, and could reasonably be expected to constitute an unwarranted invasion of personal privacy.  *See id.* ¶ 40.

40.     The FBI next examined the records at issue to determine whether there was any public interest that outweighed the substantial privacy interests of the FBI SA referenced in the responsive records.  The FBI could not identify any discernible public interest.  Accordingly, the FBI determined that the disclosure of the name of the FBI SA would shed no light on the FBI's performance of its statutory duties in the investigation of the plaintiff.  Thus, the FBI determined that the SA's privacy interests outweighed any public interest in disclosure, and that disclosure of the name and identifying information of the FBI SA would constitute a clearly unwarranted invasion of personal privacy, and could reasonably be expected to constitute an unwarranted invasion of personal privacy.  *See id.* ¶ 41.

<u>JUSTIFICATION FOR WITHHOLDING OF MATERIAL UNDER FOIA EXEMPTION 1</u>

41.     David M. Hardy has been designated by the Attorney General of the United States

as an original classification authority and a declassification authority pursuant to Executive

Order 12958, as amended.

42.     David M. Hardy personally and independently examined the information in the

DIOG withheld from plaintiff pursuant to FOIA Exemption 1.  He determined that the classified

information continues to warrant classification at the "Secret" level, respectively, and is exempt

from disclosure pursuant to E.O. 12958, as amended, § 1.4, categories (c) intelligence activities,

sources and methods and (d) foreign relations or foreign activities.  Hardy Decl. ¶ 15.

43.     E.O. 12958, as amended, § 1.4 (c), exempts from disclosure "intelligence

activities (including special activities), intelligence sources or methods, or cryptology."

Classified information is withheld on certain pages to protect intelligence activities and methods

utilized by the FBI for gathering intelligence data.  An intelligence activity or method includes

any intelligence action or technique utilized by the FBI against a targeted individual or

organization that has been determined to be of national security interest.  An intelligence method

is used to indicate any procedure (human or non-human) utilized to obtain information

concerning such individual or organization.  An intelligence activity or method has two

characteristics.  First, the intelligence activity or method and information generated by it is

needed by U.S. Intelligence/Counterintelligence agencies to carry out their missions.  Second,

confidentiality must be maintained with respect to the activity or method if the viability,

productivity and usefulness of its information is to be preserved.  Hardy Decl. ¶ 16.

44.     The FBI protected the following category of information specific to intelligence

activities and methods because disclosure reasonably could be expected to cause serious damage to the national security.  The withheld information on DIOG-379-382 contains detailed intelligence information gathered on specific individuals or organizations of national security interest.  These pieces of information are effective means for the FBI to gather, store or disseminate intelligence information.  The criteria utilized by the FBI in these instances to decide what actions by an individual or organization warranted the commencement of an investigation, or caused a certain activity to be given investigative attention over others, could be revealed through disclosure of this information.  The criteria applied and priorities assigned are used in the FBI's present intelligence or counterintelligence investigations, and are in accordance with the Attorney General's guidelines on FBI intelligence or counterintelligence investigations.  The information obtained from the intelligence activities or methods is very specific in nature, provided during a specific time period, and known to very few individuals.  Hardy Decl. ¶ 17.

45.     The intelligence activities or methods withheld in this case are still used by the FBI today to gather intelligence information.  The release of this information could reasonably be expected to cause serious damage to the national security for the following reasons: (1) disclosure would allow hostile entities to discover the current intelligence gathering methods used; (2) disclosure would reveal current specific targets of the FBI's national security investigations; and (3) disclosure would reveal the determination of the criteria used and priorities assigned to current intelligence or counterintelligence investigations.  With the aid of this detailed information hostile entities could then develop countermeasures which could severely disrupt the FBI's intelligence-gathering capabilities.  This would severely damage the FBI's efforts to detect and apprehend violators of the national security and criminal laws of the United States.  The information withheld is properly classified at the "Secret" level and withheld pursuant to E.O. 12958, as amended, § 1.4 (c).  Hardy Decl. ¶ 18.

46.     The classified information withheld on DIOG-379-382 contains information regarding detailed intelligence activities gathered or compiled by the FBI on a specific individual or organization of national security interest as the DIOG applies to all intelligence collection activities conducted by the FBI within the United States or outside the territories of all countries. Hardy Decl. ¶ 19.

47.     The classified information withheld on certain pages contains sensitive intelligence information gathered by the United States either about or from a foreign country as the DIOG applies to all intelligence collection activities conducted by the FBI within the United States or outside territories of all countries.  This condition exists due in part to the delicate nature of international diplomacy.  This information must be handled with care so as not to jeopardize the fragile relationships that exist among the United States and certain foreign governments.  Hardy Decl. ¶ 20.

48.     Information that identifies intelligence information gathered by the United States either about or from a foreign country is sensitive.  This condition exists due in part to the delicate nature of international diplomacy.  This information must be handled with care so as to not jeopardize the fragile relationships that exist among the United States and certain foreign governments.  The unauthorized disclosure of information concerning foreign relations or foreign activities of the United States can reasonably be expected to lead to diplomatic or economic retaliation against the United States; identify the target, scope or time frame of intelligence activities of the United States in or about a foreign country, which may result in the curtailment or cessation of these activities; enable hostile entities to assess United States intelligence gathering activities in or about a foreign country and devise countermeasures against these activities; or compromise cooperative foreign sources which may jeopardize their safety and curtail the flow of information from these sources.  Hardy Decl. ¶ 21.

49.     The information withheld in this case pursuant to Exemption 1 was examined in

17

light of the body of information available to Mr. Hardy concerning the national defense and

foreign relations of the United States.  This information was not examined in isolation.  Instead,

each piece of information was evaluated with careful consideration given to the impact that

disclosure of this information will have on other sensitive information contained elsewhere in the

United States intelligence community's files.  Equal consideration was given to the impact that

other information either in the public domain or likely known or suspected by present or

potential adversaries of the United States, would have upon the information Mr. Hardy

examined.  Hardy Decl. ¶ 22.

Dated:  November 13, 2009                              Respectfully submitted,

                                                                      TONY WEST
                                                                      Assistant Attorney General

                                                                      JOHN TYLER
                                                                      Assistant Director
                                                                      Civil Division

                                                                        /s/Bryan R. Diederich
                                                                      Bryan R. Diederich (MA BBO # 647632,
                                                                      NY Reg. # 4216164)
                                                                      Trial Attorney
                                                                      United States Department of Justice
                                                                      Civil Division, Federal Programs Branch
                                                                      P.O. Box 883, Room 7109
                                                                      Washington, D.C. 20530
                                                                      Tel:  (202) 305-0198
                                                                      Fax:  (202) 616-8470
                                                                      E-mail:  bryan.diederich@usdoj.gov

                                                                      Attorneys for Defendant